UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  6/1/2020
```

SUAAD YAFAI, HELMI MOHAMMED
ALQUTAIBI; S.A.,

                                    Plaintiffs,

                    -against-                                  20 Civ. 2932 (AT)

KENNETH T. CUCCINELLI, Acting Director of          **ORDER**
U.S. Citizenship and Immigration Services; U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES; DONALD J. TRUMP, President of
the United States of America; CHAD WOLF,
Acting Secretary of Department of Homeland
Security; U.S. DEPARTMENT OF HOMELAND
SECURITY; MICHAEL R. POMPEO, Secretary
of State; U.S. DEPARTMENT OF STATE; LEE
BOWLES, Acting Director of the New York
District, U.S. Citizenship and Immigration
Services; SUSAN QUINTANA, Director of the
New York Field Office, U.S. Citizenship and
Immigration Services; JOHN DOE (A.K.A.
OFFICER "BAYOUMI"), Immigration Service
Officer,

                                    Defendants.

ANALISA TORRES, District Judge:

        Plaintiffs, Suaad Yafai, Helmi Mohammed Alqutaibi, and Alqutaibi's minor daughter

S.A., claim that U.S. Citizenship and Immigration Services ("USCIS") wrongly denied

applications that would grant Alqutaibi the status of a lawful permanent resident, and allow S.A.

to live in the United States.  Compl. ¶¶ 1–8, ECF No. 5.  They seek a preliminary injunction

requiring Defendants—USCIS officials, as well as the Secretary of State, the Secretary of

Homeland Security, their respective departments, and the President of the United States—to

grant their applications for adjustment of immigration status.  Pl. Mem. at 17, ECF No. 7.  For

the reasons that follow, Plaintiffs' motion for a preliminary injunction is DENIED.[1]

## BACKGROUND

Yafai is a United States citizen.  Yafai Decl. ¶ 4, Ex. QQ.[2]  Her husband, Alqutaibi, is a

Yemeni national, who entered the United States on a visitor visa in 2013.  Alqutaibi Decl. ¶¶ 4–

5, Ex. RR.  Yafai and Alqutaibi married in 2016, and had a child that same year.  Yafai Decl. ¶ 4;

Alqutaibi Decl. ¶ 8.  Alqutaibi has a daughter from a previous marriage, S.A., who currently

resides in Saudi Arabia with Alqutaibi's mother.  Alqutaibi Decl. ¶¶ 6–7.

In 2016, Yafai filed an I-130 petition and an I-485 petition on Alqutaibi's behalf, and an

I-130 petition on S.A.'s behalf.  Exs. K, L.  An I-130 is a "petition for alien relative," which

"results in the beneficiary of the petition being classified as an immediate relative for purposes of

issuing a visa for admission to the United States."  *Ahmed v. Cissna*, 327 F. Supp. 3d 650, 658

(S.D.N.Y. 2018) (internal quotation marks and citation omitted), *aff'd sub nom. Ahmed v.*

*Cuccinelli*, 792 F. App'x 908 (2d Cir. 2020).  An I-485 is an application to register for

permanent residence, and if approved grants the beneficiary the status of a lawful permanent

resident.  *See Mantena v. Johnson*, 809 F.3d 721, 725 (2d Cir. 2015)  ("If [an] I–485 is approved,

the alien becomes a lawful permanent resident and obtains a green card.").  An interview with

USCIS on the petitions was scheduled for March 14, 2019 (the "March 14 Interview").  Ex. FF.

Yafai and Alqutaibi appeared for the March 14 Interview with Darilyn Octave, a junior

lawyer in their attorney's office.  Goldberg Decl. ¶¶ 14–16, Ex. PP.  The interview was

conducted by Defendant Bayoumi, whose full name Plaintiffs do not know.  Compl. ¶¶ 114–115;

---

[1] Because no material facts are in dispute, the Court may resolve Plaintiffs' motion without holding an evidentiary hearing.  *See Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) ("An evidentiary hearing is not required when the relevant facts either are not in dispute or have been clearly demonstrated at prior stages of the case, or when the disputed facts are amenable to complete resolution on a paper record.").
[2] Plaintiffs' exhibits were filed under seal.

Yafai Decl. ¶ 10; Alqutaibi Decl. ¶ 14.  Julie Goldberg, Plaintiffs' primary attorney (and their counsel in this case), was out of the country at the time of the interview.  Goldberg Decl. ¶ 14.  According to Plaintiffs, Bayoumi stated at the outset that it would not be a "normal" interview.  Yafai Decl. ¶ 11 (internal quotation marks omitted).  He proceeded to "interrogat[e]" Yafai and Alqutaibi.  Compl. ¶ 183.  He asked Yafai and Alqutaibi if Alqutaibi ever used a different name; after they each said he did not, he asked Yafai to state Alqutaibi's full name, and when she replied "Helmi Mohammed Alqutaibi," responded, "Oh, so he does use a different name"— apparently because Alqutaibi's full name is Helmi Mohammed Nasser Alqutaibi, and Yafai had failed to say Nasser.  Yafai Decl. ¶ 12; Alqutaibi Decl. ¶ 14.  Plaintiffs state that Bayoumi then asked Alqutaibi "all sorts of questions that had nothing to do with our marriage or [S.A.] or the applications."  Yafai Decl. ¶ 13; Alqutaibi Decl. ¶ 16 ("The officer was very aggressive and rude.  He made me feel uncomfortable.  He kept asking questions that seemed unusual and had nothing to do with our marriage."); *see also* Octave Notes, Ex. KK ("During the interview, the officer proceeded to ask the beneficiary many questions that had nothing to do with the bona fide marriage or I-485 adjudication.").

Octave, who was trained to conduct routine I-130 and I-485 interviews, believed herself to be unqualified to deal with this more searching inquiry, and requested that the interview be postponed until Goldberg was back in the country and could appear at the interview with Plaintiffs.  Octave Notes; Yafai Decl. ¶ 16; Alqutaibi Decl. ¶ 20.  She provided a handwritten request to Bayoumi and to his supervisor, stating:

> This interview has been conducted as a fact-finding mission and not as a routine adjudication.  I have a duty under the code of professional responsibility to competently advocate for and represent my client.  Given the fact that this interview has gone outside the scope of a typical I-130/I-485 interview, I do not feel comfortable that I can competently represent the client.  Therefore, I am asking that the interview be rescheduled at a time when Ms. Julie Goldberg, the

primary attorney on this case, can do the interview.  If this interview is terminated in violation of my client's rights, we will file a federal lawsuit.  If an attorney states that he/she cannot competently continue a hearing or interview, the client has a right to counsel under 5 U.S.C. [§] 555(b) and that needs to be respected.  Ms. Julie Goldberg will be back from Africa in April and if the interview is scheduled around this time she will be able to accompany the client.

Had this been a normal/routine I-130/I-485, I would have been comfortable representing the client throughout the duration of the interview.  However, the interview went outside the scope of the I-130/I-485 and we had no notice that USCIS intended on interrogating the client.  Given these facts, we respectfully request that the interview be rescheduled so that the client can be represented by competent counsel as is their right by law.

Ex. JJ.  According to Plaintiffs, the USCIS officials informed them that they would receive a decision on their request to reschedule within two weeks.  Yafai Decl. ¶ 16; Alqutaibi Decl. ¶ 20; Octave Notes.

On June 10, 2019, USCIS issued decisions denying the petitions.  Alqutaibi I-130 Decision, Ex. LL; Alqutaibi I-485 Decision, Ex. MM; S.A. I-130 Decision, Ex. NN.  The decisions informed Yafai that because Octave had entered an appearance as her attorney, and neither Yafai nor her attorney had asked to reschedule the interview in advance, she "ha[d] not submitted a valid reason to reschedule your interview."  Alqutaibi I-130 Decision at 2.[3] Moreover, the decision stated that "[b]y terminating the interview and failing to provide the required testimony, you cut off material lines of inquiry regarding your divorce from your first husband, information about [Alqutaibi's] first divorce, information about [Alqutaibi's] second divorce and his marital history, [and] information about [Alqutaibi's] daughter."  *Id.*  This conduct "prevent[ed] USCIS from being able to determine if you meet all the eligibility requirements to classify the beneficiary as your spouse."  *Id.*  The decision concluded, "Based on

---

[3] The reasoning in Alqutaibi's and S.A.'s I-130 decisions is virtually identical, and the denial of Alqutaibi's I-485 petition is based on the denial of his I-130 petition.  Accordingly, the Court relies on Alqutaibi's I-130 as representative of USCIS's reasoning on all three petitions.

the fact that you terminated the interview prior to its conclusion, you have failed to establish

your eligibility and your Form I-130 is considered abandoned and is denied." *Id.*

## ANALYSIS

I.   <u>Legal Standard</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*

*v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  To obtain a preliminary injunction against

government action taken pursuant to a statute or regulatory scheme the moving party must

"demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the

merits, and (3) public interest weighing in favor of granting the injunction." *Friends of the E.*

*Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016).

Movants are held to a "heightened standard where:  (i) an injunction is mandatory"—in

other words, it seeks a change to the status quo, as opposed to a prohibitory preliminary

injunction that merely maintains the status quo—"or (ii) the injunction will provide the movant

with substantially all the relief sought and that relief cannot be undone even if the defendant

prevails at a trial on the merits." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638,

650 (2d Cir. 2015) (internal quotation marks and citation omitted).  To obtain an injunction in

those circumstances, "the movant must show a clear or substantial likelihood of success on the

merits, and make a strong showing of irreparable harm." *Id.* (internal quotation marks and

citation omitted).

Plaintiffs here are pursuing a mandatory injunction.  They ask the Court to alter the status

quo by ordering Defendants to reverse their decision to deny Plaintiffs' I-130 applications, and to

vacate the denial of their I-485 application.  Pl. Mem. at 17.  Accordingly, Plaintiffs must show a

clear or substantial likelihood of success on the merits, and make a strong showing of irreparable harm.

II.    Application

A. Irreparable Harm

To demonstrate irreparable harm, a plaintiff must show that an "actual and imminent" injury will occur that "cannot be remedied if a court waits until the end of trial to resolve the harm." *Singas Famous Pizza Brands Corp. v. New York Advertising LLC*, 468 F. App'x 43, 45 (2d Cir. 2012) (internal quotation marks and citation omitted).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (internal quotation marks and citation omitted); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary.").

Plaintiffs allege that Bayoumi's conduct during the March 14 Interview and the subsequent denial of their applications for adjustment of status deprived them of a liberty interest without adequate procedural protections, and discriminated against them on the basis of race, religion, non-citizen status, and national origin, in violation of the Fifth Amendment's due process clause.  Pl. Mem. at 24–28.  Those allegations are sufficient to establish irreparable harm for purposes of a preliminary injunction.  *See, e.g.*, *Barbecho v. Decker*, No. 20 Civ. 2821, 2020 WL 1876328, at *6 (S.D.N.Y. Apr. 15, 2020) ("Petitioners allege in their petition that their substantive due process rights have been violated.  Accordingly, no further showing of irreparable injury is necessary." (internal quotation marks and citation omitted)); *Diaz v. New York City Bd. of Elections*, 335 F. Supp. 2d 364, 367 (E.D.N.Y. 2004) ("[P]laintiff claims that

she was denied the equal protection of the laws . . . .  That allegation and the presumption of

irreparable harm to which it gives rise satisfies the first requirement for a preliminary

injunction." (citations omitted)).

To be sure, the need for relief may appear less urgent in light of the fact that Plaintiffs

allowed nearly a year to pass between the denial of their applications and bringing suit.  *See*

Alqutaibi I-130 Decision at 1 (denying petition on June 10, 2019); Compl. at 45 (seeking relief

on April 9, 2020).  "Undue delay in seeking interim relief undercuts the sense of urgency that

ordinarily accompanies preliminary injunction motions and suggests that irreparable harm is not

occurring or imminent," and "[i]n some cases, undue delay may justify denial of interim relief

altogether."  *Five Borough Bicycle Club v. City of New York*, 483 F. Supp. 2d 351, 361

(S.D.N.Y. 2007), *aff'd*, 308 F. App'x 511 (2d Cir. 2009).  But where, as here, an alleged

wrongful governmental act has resulted in an ongoing deprivation of constitutional rights, delay

in seeking relief does not defeat the presumption of irreparable harm—at least when the delay is

not so severe as to implicate the equitable doctrine of laches, which Defendants have not

asserted.  *Id.*; *see also, e.g.*, *Bergamaschi v. Cuomo*, No. 20 Civ. 2817, 2020 WL 1910754, at *8

(S.D.N.Y. Apr. 20, 2020)  ("[T]he fact that New York's mandatory detention scheme for alleged

parole violators has gone unchallenged for decades by generations of other parole violators does

not undercut the irreparable harm argument made by today's imprisoned parole violators on the

basis of that their alleged constitutional rights are being violated currently.").

Accordingly, the Court holds that Plaintiffs have adequately alleged irreparable harm

because they allege an ongoing violation of their constitutional rights absent an injunction.

B.  Likelihood of Success

Plaintiffs assert that Defendants' conduct with respect to their adjustment of status applications was legally deficient in three different ways:  (1) failing to follow the agency's own procedures, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq.*, Pl. Mem. at 21–24; (2) depriving Plaintiffs of their protected interest in adjudication of their applications without adequate process, in violation of the Fifth Amendment to the Constitution, *id.* at 24–26; and (3) intentionally discriminating against Plaintiffs on the basis of their race and national origin, *id.* at 26–28.  The Court concludes that they have not established a clear likelihood of success on any of those claims.

1.  Administrative Procedure Act

The APA allows a party injured by an agency's decision to request that a court "hold unlawful and set aside agency action" if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  That standard applies to challenges to denials of applications by USCIS.  *See Risoli v. Nielsen*, 734 F. App'x 61, 62 (2d Cir. 2018).

An agency's failure to follow its own established policies and procedures can support an APA claim.  If an agency "announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as arbitrary, capricious, or an abuse of discretion within the meaning of the Administrative Procedure Act."  *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (internal

quotation marks and alterations omitted).  "[W]here the rights of individuals are affected, it is

incumbent upon agencies to follow their own procedures.  This is so even where the internal

procedures are possibly more rigorous than otherwise would be required."  *Salazar v. King*, 822

F.3d 61, 76 (2d Cir. 2016) (internal quotation marks and citation omitted).

      Plaintiffs claim that USCIS's established procedures were violated first by Bayoumi's

failure "to conduct the interview in an appropriate manner," and second by the denial of

Plaintiffs' petitions without providing a second interview where they could appear alongside

Goldberg.  Pl. Mem. at 22–23.  Plaintiffs cannot establish an APA violation based on the conduct

of the March 14 Interview.  Aside from one question concerning Alqutaibi's full name, Plaintiffs

have provided no evidence as to the content of the purportedly irrelevant questions, or how they

deviated from appropriate questions.  *See generally* Pl. Mem.; Yafai Decl.; Alqutaibi Decl.;

Octave Notes; Goldberg Decl., Ex. PP.  Thus, even assuming Plaintiffs are correct that unduly

harsh, probing, or non-germane questioning can constitute an actionable failure by USCIS to

follow its own procedures, there is no way for the Court to assess the appropriateness of the

questions asked in the March 14 Interview.

      In any event, the questioning in the March 14 Interview did not result in the denial of

Plaintiffs' applications.  Rather, USCIS based its denial on Plaintiffs' refusal to go forward with

the interview accompanied by Octave, rather than by Goldberg.  *See* Alqutaibi I-130 Decision at

1–2.  Denying Plaintiffs' petitions because they refused to continue answering questions at their

interview falls squarely within USCIS's regulations, which state that "[f]ailure to submit

requested evidence which precludes a material line of inquiry shall be grounds for denying the

benefit request," and that "[f]ailure to appear . . . for a required interview, or to give required

testimony, shall result in the denial of the related benefit request."  8 C.F.R. § 103.2(b)(14); *see,*

*e.g.*, *In re Cuevas*, 2009 WL 1799976, at *1 (B.I.A. May 29, 2009) ("[T]he failure of the beneficiary and [spouse] to submit the requested evidence or give required testimony was sufficient on its face to deny the . . . petition.").

And Plaintiffs have not provided any reason to think that USCIS was required to reschedule the interview when, midway through, Plaintiffs' counsel determined that she was unable to provide adequate representation.  The regulations governing interviews with USCIS provide that "[a]ny person required to appear . . . may, *before the scheduled date and time of the appearance* . . . [f]or good cause, request that the [interview] be rescheduled."  8 C.F.R. § 103.2(b)(9)(ii) (emphasis added).[4]  But Plaintiffs requested the rescheduling of their interview after it began.  Department of Homeland Security regulations also provide that for any "examination," "the person involved shall have the right to be represented by an attorney or representative."  8 C.F.R. § 292.5(b); *see also* 8 C.F.R. § 103.2(a)(3) ("An applicant or petitioner may be represented by an attorney in the United States . . . ."); 5 U.S.C § 555(b) ("A person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative.").  Plaintiffs were represented at the March 14 Interview by an attorney of their choice, who had entered an appearance on their behalf.  Alqutaibi I-130 Decision at 2; Octave Notes.  Beyond general statements that Octave was a junior attorney trained only to conduct routine interviews, Plaintiffs have not provided any evidence showing why she could not provide sufficient representation to meet the requirements of the regulations.  But more to the

---

[4] Section 103.2(b)(9) sets out rules for an "[a]ppearance for interview or biometrics," and states that "USCIS may require any applicant, petitioner, sponsor, beneficiary, or individual filing a benefit request, or any group or class of such persons submitting requests, to appear for an interview and/or biometric collection."  It then provides that "[a]ny person required to appear under this paragraph may, before the scheduled date and time of the appearance," take certain enumerated actions, among them, "[f]or good cause, request that the biometric services appointment be rescheduled."  8 C.F.R. § 103.2(b)(9)(ii).  Although that subsection refers only to biometric services appointments, and not to interviews, in context it appears to cover both biometric and interview appointments, and both parties treat it that way.  *See* Compl. ¶ 96; Gov't Opp. at 8–9, ECF No. 34.

point, Plaintiffs have not pointed to any rule or policy that required USCIS to halt the proceeding

and reschedule it when, as the interview unfolded, that attorney had misgivings about her ability

to represent Plaintiffs.

Accordingly, the Court concludes that Plaintiffs have not shown a clear likelihood of

success on their APA claim.

### 2.   Procedural Due Process

The Fifth Amendment's Due Process Clause provides that no person shall "be deprived

of life, liberty, or property, without due process of law."  The Due Process Clause requires that

the Government follow adequate procedures before it can deprive a person of certain liberty or

property interests—a protection referred to as "procedural due process."  *Mathews v. Eldridge*,

424 U.S. 319, 332 (1976).

"Federal courts examine procedural due process questions in two steps:  the first asks

whether there exists a liberty or property interest which has been interfered with by the State; the

second examines whether the procedures attendant upon that deprivation were constitutionally

sufficient."  *Francis v. Fiacco*, 942 F.3d 126, 141 (2d Cir. 2019) (internal quotation marks and

citation omitted).  "A liberty interest may arise from the Constitution itself, by reason of

guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created

by state laws or policies."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).

"To have a property interest in a benefit, a person . . . must . . . have a legitimate claim of

entitlement to it," which is "created and [has its] dimensions . . . defined by existing rules or

understandings that stem from an independent source such as state law."  *Town of Castle Rock,*

*Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (internal quotation marks and citations omitted).

Once a liberty or property interest is established, courts "consider whether the procedures that

the [government] followed . . . sufficiently protected that interest." *Francis*, 942 F.3d at 142

(internal quotation marks and citation omitted). "[D]ue process requires, at a minimum . . . an

opportunity to be heard at a meaningful time and in a meaningful manner." *Aslam v. Mukasey*,

537 F.3d 110, 114 (2d Cir. 2008) (internal quotation marks and citations omitted).

The Court will assume, without deciding, that Plaintiffs have either a protected liberty

interest or a protected property interest in the adjudication of their petitions. *See, e.g.*, *Ching v.

Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013) ("[G]rant of an I–130 petition for immediate

relative status is a . . . protected interest . . . entitled to the protections of due process."); *Caplash

v. Johnson*, 230 F. Supp. 3d 128, 139 (W.D.N.Y. 2017) (holding a protected "property interest

attaches to the adjudication of Plaintiff's Form I–130"). *But see, e.g.*, *Owusu-Boakye v. Barr*,

376 F. Supp. 3d 663, 681 (E.D. Va. 2019), *appeal filed*, No. 19-1598 (4th Cir. June 5, 2019)

("[I]t remains unresolved whether a person has a liberty interest in residing with his or her alien

spouse in the United States such that deprivation of that liberty entitles that person to due process

protections."); *Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 313 (D.D.C. 2017) ("[T]he [c]ourt has

not found any support for the proposition that [an I-130 applicant] has a constitutionally

protected liberty or property interest in his application being adjudicated in accordance with the

law, given that the ultimate determination of whether his application will be granted is

discretionary.").

Even so, Plaintiffs have not established that Defendants followed inadequate procedures

in denying their applications.  Plaintiffs allege that Defendants have "outlined and implemented a

discriminatory policy and practice of treating Yemeni applicants different from non-Yemeni

applicants."  Pl. Mem. at 25.  But they do not demonstrate any connection between this alleged

policy and the denial of Plaintiffs' applications.  Plaintiffs' petitions were not denied because

"Defendants consider all Yemeni I-130 petitions to be fraudulent until proven otherwise." *Id.* (internal quotation marks and citation omitted). They were denied because Plaintiffs terminated their interview early. *See* Alqutaibi I-130 Decision at 1–2. Plaintiffs, therefore, cannot show a deprivation of their due process rights based on alleged deficiencies in what Plaintiffs call the "Yemeni Adjudication Scheme." *Id.*; *see Kasica v. U.S. Dep't of Homeland Sec., Citizenship & Immigration Servs.*, 660 F. Supp. 2d 277, 282 (D. Conn. 2009) (denying procedural due process claim where plaintiff "failed to take advantage of the [USCIS] procedures she challenges as inadequate").

Plaintiffs also have not shown that USCIS's decision not to reschedule their interview constituted a deprivation of due process. They assert that USCIS failed to "provide a reasonable opportunity to be heard by failing to reschedule the interview," and "failed to follow their own procedural safeguards." Pl. Mem. at 25–26. The Court has already held that Plaintiffs have not shown that USCIS violated its own procedures in declining to reschedule Plaintiffs' interview once it began. And Plaintiffs have not established that USCIS's decision not to schedule a second interview deprived them of an opportunity to be heard at a reasonable time and in a reasonable manner. Plaintiffs were informed of their interview well in advance, had the opportunity to prepare, and appeared with counsel. *See* Ex. FF (informing Plaintiffs of the time of their interview three weeks in advance). They have not provided any authority for the proposition that, when their attorney felt unequipped to assist them in responding to questions at the interview, due process required USCIS to provide another opportunity to be heard, alongside a different lawyer.

Accordingly, the Court holds that Plaintiffs have failed to establish a clear likelihood of success on their procedural due process claims.

13

3.   Equal Protection

The Fifth Amendment's Due Process Clause also guarantees equal protection of the laws, and prohibits invidious discrimination by the federal government.  *See Skelly v. I.N.S.*, 168 F.3d 88, 91 (2d Cir. 1999) ("[E]ven though the Fifth Amendment itself—unlike the Fourteenth—does not contain any specific equal protection language, the [federal government] and the statutory authority under which the [government] acts must still comport with equal protection principles.").  "In order to plead a Fifth Amendment claim for discrimination, a plaintiff must allege facts showing one of three things: (1) that a law or policy is discriminatory on its face; (2) that a facially neutral law or policy has been applied in an intentionally discriminatory manner; or (3) that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus."  *Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 819 (S.D.N.Y. 2011) (internal quotation marks and citations omitted).

Plaintiffs assert that the denial of their petitions was impermissibly based on race or national origin.  Pl. Mem. at 26–28.  They rely on the harshness of Bayoumi's questioning, and the alleged policy of scrutinizing Yemeni applicants' claims more stringently than others.  *Id.* at 27–28.  Plaintiffs have not, however, provided any meaningful evidence showing that Bayoumi's interview style or the supposed USCIS policy are motivated by discriminatory animus.  Worse still, they have not put forward any reason to believe that those alleged unlawful actions caused the denial of their petitions, rather than the stated reason provided by USCIS:  Plaintiffs' termination of their interview.  Alqutaibi I-130 Decision at 1–2.

Accordingly, the Court concludes that Plaintiffs have failed to establish a clear likelihood of success on their equal protection claims.

**CONCLUSION**

Because Plaintiffs have not demonstrated a clear or substantial likelihood of success on their claims, their motion for a preliminary injunction is DENIED.  The Clerk of Court is directed to terminate the motion at ECF No. 7

SO ORDERED.

Dated: June 1, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge